## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Criminal No. 23-0047 (ADC) |
| **JOAQUIN ALEXANDER CRUZ-JIMENEZ** | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.    Introduction

On February 2, 2023, Joaquín Alexander Cruz-Jiménez was charged with violations of 18 U.S.C. § 922(g)(1) (prohibited person in possession of firearm and ammunition). Docket No. 3. Defendant filed a motion to suppress post-arrest statements. Docket No. 26. Defendant also filed a motion to suppress a firearm and ammunition seized from his car. Docket No. 39. The Government opposed. Docket Nos. 31, 43.

The motions were referred to the undersigned for a hearing and Report and Recommendation. Docket No. 40. An evidentiary hearing was held on February 13 and 14, 2024. See Docket Nos. 87-88. The Government called Puerto Rico Police Bureau ("PRPB") Agent Leady Martínez Cortés ("Martínez-Cortés") and Task Force Officer Ricardo Costales-González ("Costales-González"). Evidence was admitted. Both parties filed post-hearing briefs. Docket Nos. 121-122. After carefully considering the evidence and arguments, the undersigned recommends that Defendant's motions to suppress be **DENIED**.

### II.    Factual Background

The following account is drawn from the evidence, testimonial and documentary, received at the suppression hearing (the "hearing").

Defendant was arrested by the PRPB on August 27, 2022. On August 29, 2022, a Puerto Rico Municipal Judge issued a search warrant for the vehicle described as: 2022, Charcoal Gray,

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

4-Door, Toyota Thundra, License Plate 1108118, Serial Number: 5TFLA5DBXNX010116 (the "vehicle"). Docket No. 47-1. The search warrant authorized the search of the vehicle during day or night for "**a knife of approximately 3' to 4' inches in length and blood samples** or any other evidence found herein". <u>Id</u>. at 6 (emphasis in the original).[1] The search warrant was executed on September 7, 2022. Transcript of Hearing on February 13, 2024, Docket No. 99 ("Tr.") 14 ¶¶ 10-17. The vehicle had been sealed prior to the execution of the warrant. Tr. 18 ¶¶ 7-9; Tr. 36 ¶¶ 11-12; Tr. 38 ¶¶ 4-5; Government Exhibits 7, 7-A and 8. A loaded firearm and ammunition were seized from underneath a rubber mat in the floor area of the driver's seat of the vehicle. Tr. 20 ¶¶ 5-23; Government Exhibits 11 and 12. A knife was also seized from the vehicle, but the firearm was discovered first. Tr. 44 ¶¶ 18-23; Tr. 46 ¶¶ 5-9; Government Exhibits 14 and 15. Defendant was present during the search of the vehicle. Tr. 69 ¶¶ 7-11.

On February 9, 2023, Defendant was charged with violations of 18 U.S.C. § 922(g)(1). Docket No. 3. An arrest warrant and corresponding writ of *habeas corpus ad prosequendum* followed. Docket Nos. 5, 8. On February 23, 2023, Costales-González and FBI Agent Shaun Borland went to the 705 Bayamón Correctional Facility to bring Defendant before the Court to face the charges in the Indictment. Tr. 79 ¶¶ 7-11. First, they took Defendant to the FBI offices for processing and interview. <u>Id</u>. Present during the interview were Defendant, Costales-González, and Agent Borland. Tr. 80 ¶¶ 7-8. The following is a summary of the interview according to the transcript jointly submitted by the parties at Joint Exhibit 1 and the video recording of the interview submitted as Joint Exhibit 2. <u>See</u> Docket No. 92.

---

[1] During the hearing, the Government requested that the Court admit the search warrant into evidence as a self-authenticating document under Rule 902 of the Federal Rules of Evidence. The Defendant objected. The Court denied the Government's request at the time because the witness testified not to have any knowledge of the content of the search warrant (had not read the warrant) and the agent who submitted the affidavit in support of the application for search warrant was to be called as a witness during the hearing. <u>See</u> Docket No. 99 at pp. 40. 47-48. The Government then opted not to call the agent and the defense did not do so either. The Defendant had submitted the translated search warrant for the Court's consideration prior the hearing. <u>See</u> Docket No. 47-1. The Court takes judicial notice of the search warrant (albeit **not of the factual assertions in the affidavit** submitted in support of the application for the search warrant), as it is an order of a Puerto Rico Municipal Judge, and the Defendant is not challenging its authenticity or accuracy. <u>See</u> Fed.R.Evid. 201(b)(2); 201(c) (court may take judicial notice on its own); <u>see e.g.</u>, <u>United States v. Arroyo Quiñones</u>, 2019 WL 8060625, at *1 (D.P.R. Dec. 9, 2019), <u>report and recommendation adopted,</u> 2020 WL 907798 (D.P.R. Feb. 25, 2020)).

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

Immediately at the beginning of the interview, Defendant explained that he was not "new" at this and requested that the agents investigate the incident that led to his arrest by the PRPB. Joint Exhibit 1 at p. 2. Defendant was asked whether he could read and what was his education level. Id. at p. 4. The agents gave Defendant the form titled Federal Bureau of Investigations Advise of Rights. Id. at p. 4; Government Exhibit 17-A. Defendant immediately informed that he knew his rights and expressed that he would not sign the form because his legal representative was not there ("I don't want to sign…sign up anything. […] Because I don't have representation here about…you know?"). Joint Exhibit 1 at p. 4; Government Exhibit 17-A (noting "DOESNT WANT TO SIGN DOESNT HAVE REPRESENTATION"). The agents explained to Defendant that the form contained his rights and Defendant said he could read it. Id. at p. 5. Defendant read the Miranda form out loud. Id. Defendant then expressed that he did not want to answer questions but immediately followed up by stating that the agents needed to investigate the incident that led to his arrest and his kidnapping. Id. at pp. 6-9 ("I don't want to… I don't want to answer questions […] I just […] I just want to tell you that you have to investigate properly."). Defendant spoke without any questions posed by the agents for approximately 2:30 minutes. See Joint Exhibit 2 at minutes 4:36-7:06. The agents then identified themselves, asked whether Defendant reported his kidnapping, and informed that they were only working on the investigation concerning the gun. Id. at pp. 8-9. Defendant carried on making statements without any questions posed by the agents for approximately 5:00 minutes. Id. at pp. 9-11; Joint Exhibit 2 at minutes 7:27-12:30. Costales-González then inquired about the ownership of the vehicle, the financing of the vehicle, Defendant's arrival at the venue where the incident leading to his arrest occurred, whether Defendant was arrested close to the vehicle, who else was present at the time of the incident and of his arrest, the time spent by Defendant at the venue and the places visited prior to his arrest, whether Defendant was present during the sealing of the vehicle, whether Defendant was present at the time of the search of the vehicle, and as to the process followed during the search of the vehicle at the police station. Id. at pp. 12-14, 17-19, 21-24. Costales-González also inquired about Defendant's work and whether the gun found in the vehicle belonged to him. Id. at 25-27. Defendant insisted that the agents should investigate the incident that led to his arrest. Id. at p. 27.

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

### III.    Applicable Law and Analysis

### A.    The Firearm and Ammunition

Defendant argues that the seizure of the firearm and ammunition was illegal because the search warrant was fatally overbroad when it allowed the seizure of "any other evidence found" in the vehicle in violation of the particularity requirement applicable to search warrants. Defendant also sustains that, because the search warrant could only legally allow for the search of the vehicle to seize the knife and the knife could be seen immediately upon opening the vehicle, law enforcement should have stopped the search. And therefore, the seizure of the firearm and ammunition was illegal. Lastly, Defendant argues that the Government has not established the elements of the automobile exception or the inevitable discovery doctrine due to an inventory search of the vehicle. The Government sustains that the search warrant authorized the search for evidence found in the vehicle and that the firearm and ammunition were thus seized pursuant to a valid search warrant. Alternatively, the Government argues that the evidence elicited during the hearing established that the firearm and ammunition were found by law enforcement before the knife and that their seizure was legal. The Government also argues in the alternative that the application of the doctrine of inevitable discovery defeats Defendant's request for suppression.

The Fourth Amendment of the United States Constitution protects the right of people against unreasonable searches and seizures and provides that warrants will not issue but upon a showing of "probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Law enforcement must obtain a warrant from a neutral and disinterested magistrate before conducting a search. A warrant is obtained when law enforcement establishes that there is probable cause that evidence of a crime will be found in the place to be searched. As reaffirmed by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 231 (1983), the standard of probable cause is practical and nontechnical. It does not require hard certainties, but mere probabilities as ascertained by reasonable and prudent persons (making common sense conclusions) not legal technicians. Id. (citations and quotations omitted). A magistrate judge's determination of probable cause is entitled to great deference. Id. at 236; United States v. Spinosa, 982 F.2d 620, 626 (1st Cir. 1992) (citations omitted).

4

**USA v. Cruz-Jiménez**
**Criminal No. 23-0047 (ADC)**
**Report and Recommendation**

For a warrant to be valid it must also describe with particularity the place or person to be searched and the things to be seized. <u>Maryland v. Garrison</u>, 480 U.S. 79, 84 (1987). That the warrant must describe with particularity the items to be seized serves several purposes: (1) to prevent general searches, (2) to prevent the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization, and (3) to prevent warrants to be issued on "loose, vague or doubtful bases of fact" (in the absence of probable cause as to the specific items intended for seizure). 2 LaFave, <u>Search and Seizure</u> at § 4.6(a) (6th ed. 2020). The warrant at issue here allowed for the seizure of "**a knife of approximately 3' to 4' inches in length and blood samples** or any other evidence found herein." Defendant does not question the finding of probable cause by the issuing judge with respect to the knife or the blood samples. Defendant takes issue with the portion of the warrant that allows the seizure of "any other evidence found herein" as a basis to seize the firearm and ammunition found in the vehicle. I agree. The reference to "any other evidence found herein" infringes on the particularity requirement for search warrants. <u>See</u> <u>United States v. Morris</u>, 977 F.2d 677, 682 (1st Cir. 1992) (the reference to "any other object in violation of law" is impermissibly broad); 2 LaFave at § 4.6(d) (the reference to "evidence" as an item for seizure is too general). But this is not the end of the inquiry.

Pursuant to the First Circuit in <u>Morris</u>, even when a portion of the warrant is invalid as impermissibly broad, the remaining part of the warrant which is not offensive to the particularity requirement may stand. <u>Morris</u>, 977 F.2d at 682. As in <u>Morris</u>, there is no reason to invalidate the portion of the warrant that allowed for the seizure of the "knife of approximately 3' to 4' inches in length and blood samples." The question then is whether the seizure of the firearm and ammunition during the search for the knife and blood samples was valid. Both the Government and Defendant work from the assumption that the answer to that question depends on the order in which the firearm and ammunition were seized. That is, they both seem to agree <u>without discussion</u>, that items discovered during the execution of a lawful warrant are not subject to suppression if (1) discovered <u>prior</u> to the discovery of the items described in the warrant and (2) in a place where the objects to be seized under the warrant could be found. <u>See also</u> 2 LaFave at § 4.6(f) (explaining that if item not particularly described were to be found after finding the lawfully described item or in a place where the lawfully described item could not be found, suppression of the item not

5

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

particularly described could be warranted); see also id. at § 4.11(c) (courts have permitted seizure of items that had no connection with the crime for which the warrant issued).

Defendant points the Court to the photographs taken by Martínez-Cortés to argue that, because the knife was in the center console cupholder of the vehicle and could be appreciated in the initial photographs taken by Martínez-Cortés during the execution of the warrant (Defendant's Exhibits A-D), the seizure of the firearm and ammunition was illegal. But that argument is off mark. It is defeated by the very language of the search warrant and by the evidence presented during the hearing. The warrant allowed for the seizure of "**a knife of approximately 3' to 4' inches in length and blood samples** or any other evidence found herein" (emphasis in the original). As such, even assuming that the knife was seen by the agents prior to the discovery of the firearm and ammunition, the search of the vehicle could continue. The agents were expressly authorized to search the vehicle for blood samples. And there is no reason (logical or in the text of the warrant) to limit the search for blood samples to those that may have been found in the knife. It is entirely feasible that searching for the blood samples could require the examination of the entire vehicle. Because the agents were authorized to search the entire vehicle for the knife **and** the blood samples, that the knife could have been seen prior to discovery of the firearm and ammunition would not have been a bar to continue the search of the vehicle and for the eventual discovery of the firearm and ammunition.

Moreover, the testimony of Martínez-Cortés pertaining to the order in which the search was performed amply supports the conclusion that discovery of the firearm and ammunition was prior to the completion of the search authorized in the warrant— for "a knife of approximately 3' to 4' inches in length and blood samples." She convincingly testified that, when preparing to perform the search, she divided the search of the vehicle into four parts. Tr. 18 ¶¶ 17-15; Tr. 19 ¶¶ 1-2. The seals on each of the four doors of the vehicle were intact and opened as each step of the search took place.  Tr. 18 ¶¶ 14-16; Tr. 36 ¶¶ 11-12. The driver's side was searched first. Tr. 18 ¶¶ 17-22. The firearm and ammunition were discovered under a rubber mat in the driver's side. Tr. 20 ¶¶ 5-10. The search moved towards the passenger's side behind the driver's seat. Tr. 20 ¶¶ 24-25. Then the search of the passenger's side in the front of the vehicle. 21 ¶¶ 17-25. And there, according to Martínez-Cortés, the agents found and seized the knife from the cupholder of the vehicle. Tr. 21 ¶¶ 21-25; Tr. 22 ¶¶ 1-8. Afterwards, they searched the area behind the front

6

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

passenger's side. Tr. 23 ¶¶ 1-5. On several occasions during the hearing, Martínez-Cortés reaffirmed that the firearm and ammunition were discovered and seized prior to the knife. Tr. 44 ¶¶ 18-23; Tr. 46 ¶¶ 5-9. And this is consistent with the order in which Martínez-Cortés took the photographs of the items that were seized. See Government's Exhibits 3, 11-15. It is also consistent, as argued by the Government, with Defendant's statements during the custodial interview on February 23, 2023. See Joint Exhibit 1 at p. 24.

Notwithstanding the foregoing, even if we were to assume that seizure of the firearm and ammunition was impermissible under the warrant, the inevitable discovery doctrine would apply. The doctrine of inevitable discovery is an exception to the rule that evidence obtained from unlawful searches are subject to suppression. United States v. Scott, 270 F.3d 30, 42 (1st Cir. 2001). The prosecution needs to show that the Government would have discovered the challenged evidence absent the constitutional violation. Id. 270 F.3d at 42 (citing Nix v. Williams, 467 U.S. 431, 440-48 (1984)). The First Circuit looks at three factors to determine whether the doctrine applies: (1) whether the legal means by which the evidence would have been discovered are truly independent, (2) whether both the use of the legal means and the discovery by that means are truly inevitable, and (3) whether the application of the inevitable discovery exception would provide an incentive for police misconduct or significantly weaken the Fourth Amendment protection. Id. (discussing and quoting United States v. Silvestri, 787 F.2d 736, 744 (1st Cir. 1986)).

The Government argued that the firearm and ammunition would have been inevitably discovered because the vehicle seized from Defendant the day of his arrest would be subject to forfeiture and an inventory. Docket No. 43. The Government cites to 34 P.R. Laws Ann. §§ 1724f-1724g, which requires that any property used during the commission of a felony be forfeited by the PRPB. After forfeiture, an inventory of the vehicle would have been prepared by law enforcement. 34 P.R. Laws Ann. § 1724h. According to the testimony elicited during the hearing, Defendant was arrested after leaving the scene of a murder and entering his vehicle. Tr. 88 ¶¶13-25, Tr. 89 ¶¶1-3; Tr. 111 ¶¶12-14. The vehicle was forfeited and kept in the PRPB station from the day of Defendant's arrest until (at least) the day when the search warrant was executed. See Joint Exhibit 1 at 22 ("My truck was there. But my truck had been there since day one."). The doors of the vehicle were sealed and opened the day in which the warrant was executed. Tr. 38 ¶¶ 4-5; Tr. 39 ¶¶ 14-18. As such, it is reasonable to conclude that the forfeiture and inventory of the

**USA v. Cruz-Jiménez**
**Criminal No. 23-0047 (ADC)**
**Report and Recommendation**

vehicle would have occurred regardless of the existence of the search warrant. It is also reasonable to conclude that the firearm and ammunition would have been discovered during the inventory of the vehicle.[2] This satisfies both the independent and inevitable requirements of the inevitable discovery doctrine. Lastly, the conduct of law enforcement was not egregious as it was more than reasonable to conclude that the warrant authorized the search of the entire vehicle. The application of the inevitable discovery doctrine in this case would not serve as an incentive for future unconstitutional behavior. See Scott, 270 F.3d 45 (when there is no egregious conduct, doctrine should apply). In sum, even assuming for purposes of discussion that the seizure of the firearm and ammunition was illegal, the inevitable discovery doctrine would apply. See e.g., United States v. Pardue, 385 F.3d 101, 107-108 (1st Cir. 2004) (backpack would have been searched pursuant to inventory search, inevitable discovery doctrine applied); United States v. Zapata, 18 F.3d 971, 978-979 (1st Cir. 1994) (car impounded in accordance with standard practice and subject to a routine inventory search; inevitable discovery doctrine to apply (citing to collection of cases)). Suppression of the firearm and ammunition is not warranted.

**B.     The Statements**

Pursuant to the Fifth Amendment of the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Premised on this constitutional right, the U.S. Supreme Court in Miranda v. Arizona, 384 U.S. 436, 444 (1966) held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." United States v. Lugo Guerrero, 2005 WL 8163207, at *6 (D.P.R. Oct. 14, 2005). The procedural safeguards under Miranda require that the suspect be adequately and effectively appraised of his rights, and that the exercise of those rights be honored by law enforcement. Missouri v. Seibert, 542 U.S. 600, 608 (2004). To be sure, Miranda not only requires that the suspect be informed of his rights but that police cease questioning immediately upon the assertion of rights. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Therefore, the Fifth Amendment privilege against self-incrimination

---

[2]     There is no rigid requirement that the alternate legal means of obtaining the evidence (in this case, the forfeiture and inventory) would have been initiated at the time the illegal search took place. Silvestri, 787 F.2d at 745-46.

**USA v. Cruz-Jiménez**
**Criminal No. 23-0047 (ADC)**
**Report and Recommendation**

requires that, prior to questioning a suspect, the police appraise the suspect of his right to remain silent and to have counsel present during questioning, that counsel could be appointed free of charge, and of the state's intention to use any of his statements to secure a conviction. <u>Moran v. Burbine</u>, 475 U.S. 412, 420 (1986) (<u>discussing</u> <u>Miranda</u>, 384 U.S. at 468-470, 473-474).

Prior to any questions by law enforcement, Defendant was asked whether he could read and what level of schooling he had achieved. This exchange followed:

| | |
|---|---|
| Defendant: | Oh, this is about my rights? |
| Agent: | Yes. |
| Defendant: | I know my rights. |
| Agent: | Okey. But…you… |
| Defendant: | What you want me, to sign up? |
| Agent: | Yeah. |
| Defendant: | I don't want to sign…sign up anything. |
| Agent: | Okay. |
| Defendant: | I just want to tell for why. Because I don't have representation here about…you know? |
| Agent: | But it says your rights about that. […] |
| Defendant: | I can read it, if you want. |
| [Defendant read the Miranda form] | |
| Defendant: | I don't want to…I don't want to answer questions. |
| Agent: | Okey. |
| Defendant: | I just… |
| Agent: | That's alright. |
| Defendant: | I just want to tell you that you have to investigate properly. |

Joint Exhibit 1 at pp. 4-6.

In <u>Davis v. United States,</u> the United States Supreme Court established that, to invoke a right to have counsel present during a custodial interview, it is necessary for the suspect to articulate his desire to have counsel present sufficiently clear so that a reasonable police officer in the circumstances would understand the statement to be a request for counsel. <u>Davis v. United States</u>, 512 U.S. 452, 458-459 (1994). Investigators are not required to treat every mention of a lawyer as an invocation of <u>Miranda</u> rights. <u>Id</u>. at 459. If the request for counsel is not unambiguous or unequivocal, the officers have no obligation to stop questioning. <u>Id</u>. at 461-62. That a suspect "might" want to have counsel present during the interview is an insufficient assertion of right to counsel. <u>Id</u>. at 462 (finding that "maybe I should talk to a lawyer" is not a clear invocation of right to counsel). The First Circuit has expressed that if the suspect "does not unequivocally demand

assistance, request a lawyer's presence, or otherwise clearly indicate an unwillingness to make a statement [without the] presence of counsel", the suspect has not made a clear invocation of his right to counsel under Miranda. United States. v. Oquendo-Rivas, 750 F.3d 12, 19 (1st Cir. 2014) ("I do not understand this, my lawyer speaks" insufficient to demand counsel). See also United States v. Carpentino, 948 F.3d 10, 24-25 (1st Cir. 2020) (a statement such as "I kinda need a phone call to my lawyer, too. I need to let somebody know that I'm here" is ambiguous as to its purpose and not an unequivocal request for attorney assistance during custodial interview). To this end, the invocation of right to counsel under Miranda requires that counsel be requested for assistance "in dealing with custodial interrogation by police". Grant-Chase v. Commissioner, 145 F.3d 431, 436 (1st Cir. 1998) ("[t]he United States Supreme Court has quite clearly held that the rule of Miranda 'applies only when the suspect has expressed his wish for the particular type of lawyerly assistance that is subject to Miranda.'") (quoting McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)).

The foregoing is consistent with the decision of the U.S. Supreme Court in Connecticut v. Barrett, 479 U.S. 523, 525 (1987). The defendant in Barrett informed law enforcement that he would not give a written statement without the presence of counsel but that he would discuss orally the incident under investigation. Id. at 526. The U.S. Supreme Court rejected the view that the defendant's desire for counsel before making a written statement served as an invocation of the right to counsel for all purposes. Id. And held that because the defendant limited his request of counsel for written statements and expressed an affirmative willingness to speak to authorities, "the fact that officials took the opportunity provided by the defendant to obtain an oral confession is quite consistent with the Fifth Amendment." Id. at 529. If a suspect invokes a right to counsel for a discrete or limited purpose, police are not precluded from continuing the interrogation on topics not covered by the invocation. 2 LaFave, Criminal Procedure at § 6.9(g) (4th ed. 2015); United States v. Rought, 11 F.4th 178, 182–83 (3d Cir. 2021) (invocation of right to counsel may also be limited by topic or subject matter); see also United States v. Eaton, 890 F.2d 511, 514 (1st Cir. 1989); United States v. Guzmán, 603 F.3d 99, 106 (1st Cir. 2010).

Defendant expressed that he would not sign "anything" because his legal representative was not present. However, after that initial mention of counsel, Defendant did not mention his counsel again nor did he make a request for the presence of counsel prior to making his statements. Tr. 99 ¶¶ 20-22; Tr. 114 ¶¶ 8-10; Tr. 115 ¶¶ 2-11. Quite to the contrary, even after asserting that

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

he would not sign, Defendant continued to make unprompted statements to the agents. Tr. 114 ¶¶ 11-14. And, as expressed by Defendant (like the defendant in Barrett, 479 U.S. at 530), he was familiar with the process and understood his rights (see Joint Exhibit 1 at pp. 2, 4: "I am not new in this" and "I know my rights"). Given Defendant's evident willingness to continue to speak immediately after stating that he would not sign and throughout the interview, Defendant's refusal to sign the waiver form without counsel present was not a broad invocation of right to counsel. See 2 LaFave, Criminal Procedure at § 6.9(g) (refusal to sign a waiver of rights form is not conclusive proof that suspect invoked right to counsel); United States v. Oehne, 698 F.3d 119, 123 (2d Cir. 2012). Under the circumstances of Defendant's interview, a reasonable police officer would not have understood Defendant's statement that he would not sign documents as a request for assistance of counsel during the interview. See United States v. Cowette, 88 F.4th 95, 100 (1st Cir. 2024) (citations omitted). Indeed, Costales-González testified that he understood that Defendant was refusing to sign the document given to him. Tr. 83 ¶¶ 2-3. Not more. Law enforcement was not barred from continuing the interview and obtaining oral statements from Defendant.

Defendant suggests that because he had counsel in the parallel state murder case, law enforcement was barred from conducting the custodial interview in this case. There is no basis for this conclusion. The Sixth Amendment right to counsel is offense specific. McNeil, 501 U.S. at 175. It attaches once the prosecution has commenced. Id. As such, incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are admissible at trial. Id. (quoting Maine v. Moulton, 474 U.S. 159, 180 n.16 (1985) (quotations omitted)). As expressed by the U.S. Supreme Court in Moulton, "the police have an interest in investigating new of additional crimes after an individual has been formally charged with one crime, to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence is obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." Moulton, 474 U.S. at 179-180. See also Oehne, 698 F.3d at 123 (mere indication that defendant was represented by counsel in an unrelated matter does not constitute a request for counsel; no bar to question in unrelated matter under investigation).

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

Even if the Court were to assume that Defendant's refusal to sign the waiver without counsel present was a sufficiently broad and unambiguous invocation of his right to counsel for all purposes, Defendant nonetheless waived this right. The law is clear that when an accused invokes his right to counsel, interrogation must stop until counsel is present. Edwards, 451 U.S. at 484-485. The only exception is when the suspect "initiates further communication, exchanges, or conversations" with the police without coercion or probing. Id; Cowette, 88 F.4th at 103. "Initiation of interrogation by the accused has been broadly interpreted." United States v. Fontana, 948 F.2d 796, 805 (1st Cir. 1991) (discussing Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983)). However, inquires or statements by either an accused or a police officer relating to routine incidents of the custodial relationship (e.g., a request for water) will not suffice. Bradshaw, 462 U.S. at 1045. There must be indication that the accused opened a more generalized discussion relating directly or indirectly to the investigation. Id. (question by the suspect of "what is going to happen to me now" is evidence of willingness for a discussion about the investigation); Fontana, 948 F.2d at 806 (finding that "what's going to happen to me?" question by suspect posed initiation of discussion); United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998) ("What's this all about?" desire to reignite the dialogue). After Defendant said that he would not sign the form without counsel, he continued to speak. Tr. 114 ¶¶ 11-14. After reading the Miranda form, Defendant immediately spoke for approximately 2:30 minutes without any questions by the agents. See Joint Exhibit 2 at minutes 4:36-7:06. After the agents identified themselves, asked whether Defendant reported his kidnapping, and informed that they were only working on the federal investigation concerning the gun, Defendant carried on with statements for approximately 5:00 minutes again without any questions posed by the agents. Id. at pp. 9-11; Joint Exhibit 2 at minutes 7:27-12:30. At times, the agents attempted to interject but Defendant continued to speak. Joint Exhibit 1 at pp. 7-11. A review of the custodial interview establishes that Defendant's unprobed statements were related to both the incident which led to his arrest by the PRPB and the federal investigation. Any invocation of right to counsel was waived.

Defendant also waived his right to remain silent. United States v. Thongsophaporn, 503 F.3d 51, 56-57 (1st Cir. 2007) (right to remain silent is subject to waiver). The key inquiry is whether the defendant is in charge of the decision to speak. Id. A waiver is valid when made voluntarily, knowingly, and intelligently. Moran, 475 U.S. at 421. The Court is required to presume

USA v. Cruz-Jiménez
Criminal No. 23-0047 (ADC)
Report and Recommendation

that a defendant did not waive his Miranda rights. United States v. Downs-Moses, 329 F.3d 253, 267 (1st Cir. 2003) (citation omitted); Carpentino, 948 F.3d at 26. The burden is on the Government to prove a valid waiver by the preponderance of the evidence. Id.; Colorado v. Connelly, 479 U.S. 157, 168 (1986); Carpentino, 948 F.3d at 26. The inquiry is two-fold: (1) the relinquishment of rights must be a free and deliberate choice, absent intimidation, coercion, or deception, and (2) the waiver must be made with full awareness of the nature of the rights being abandoned and of the consequences of such abandonment. Moran, 475 U.S. at 421 (citations omitted); Carpentino, 948 F.3d at 26.

As soon as Defendant entered the interview room, he requested that his handcuffs be removed. The handcuffs were removed. Tr. 79 ¶¶ 12-15. Defendant expressed familiarity with the interview process. Joint Exhibit 1 at pp. 2, 4. He also expressed that he knew his rights. Id. at p. 4. Defendant expressed that he had some college education. Id. He was given the Miranda form, which he said he could read. Id. at pp. 4-6. After reading the Miranda form, Defendant immediately continued speaking without questions posed by the agents. Defendant appeared to have understood his rights. He also appears in the video to be calm, willing to talk and engage with law enforcement, and to have control over the conversation. Joint Exhibit 2. Costales-González testified that Defendant seemed calm, seemed to have knowledge of the process and control over himself. Tr. 93 ¶¶ 4-12. See Lugo Guerrero, 2005 WL 8163207, at *7 (to find that a waiver of Miranda rights has been knowingly and intelligently, the suspect be aware of his rights not to talk to law enforcement, to talk only in the presence of counsel, or to discontinue talking at any time). Furthermore, the interview was not unusually long (approximately 35 minutes) and there is absolutely no evidence of coercion by law enforcement. See Joint Exhibit 2; Connelly, 479 U.S. at 167; United States v. Boskic, 545 F.3d 69, 78 (1st Cir. 2008) (police coercion is a necessary element for a finding involuntariness in waiving rights under Miranda). There is sufficient evidence of Defendant's knowledge of his rights and his voluntary relinquishment of those rights.[3] There was no violation of Defendant's right to remain silent. See e.g., Berghuis v. Thompkins, 560

---

[3] There is no requirement a Miranda waiver be made in writing. Thompkins, 560 U.S. at 385 (Miranda rights can be waived through means less formal than a typical waiver on the record in a courtroom). Neither a signed waiver of Miranda rights nor any other form of documentation is required. U.S. v. Coombs, 857 F3d 439, 450 (1st Cir. 2017); United States v. Speaks, 453 F.2d 966, 969 (1st Cir. 1972); Guzmán, 603 F.3d at 106 (oral waivers are valid).

USA v. Cruz-Jiménez
**Criminal No. 23-0047 (ADC)**
**Report and Recommendation**

U.S. 370, 384-386 (2010) (where the prosecution shows that a <u>Miranda</u> warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent); <u>United States v. Simpkins</u>, 978 F.3d 1, 11–12 (1st Cir. 2020) (finding implicit waiver when defendant was given an adequate explanation of his <u>Miranda</u> rights, the defendant acknowledged that he understood these rights, and was willing to answer questions).

## IV.    Conclusion

For the reasons discussed above, Defendant's motions to suppress at Docket No. 26 and 39 should be **DENIED.**

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed within fourteen (14) days of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of appellate review. <u>Thomas v. Arn</u>, 474 U.S. 140, 154-155 (1985); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992).

In San Juan, Puerto Rico, this 9th day of May 2024.

<u>s/Giselle López-Soler</u>
GISELLE LÓPEZ-SOLER
United States Magistrate Judge