THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JOAQUÍN CRUZ-JIMÉNEZ, <br><br> Defendant. | Crim No. 23-47 (ADC) |

**OPINION AND ORDER**

**I.     Introduction**

On July 31, 2023, defendant Joaquín Cruz-Jiménez ("defendant") filed a motion seeking to dismiss the one-count indictment against him based on the purported unconstitutionality of 18 U.S.C. § 922(g)(1). **ECF No. 38**. This statute makes it unlawful for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Defendant claims this statute runs afoul of the people's right to keep and bear arms protected by the Second Amendment. U.S. Const. amend. II. On August 22, 2023, the government filed a response in opposition. **ECF No. 44**.

For the reasons explained below, the Court **DENIES** defendant's motion to dismiss at **ECF No. 38**.

II.   **Background**

On February 9, 2023, a grand jury returned an indictment charging defendant with being a prohibited person in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1). **ECF No. 3**. Specifically, the indictment charged defendant with being a felon in possession of a .45 caliber Glock 30s pistol and 11 rounds of .45 caliber ammunition. *Id.*

In his motion to dismiss, defendant attacks the constitutionality of 18 U.S.C. § 922(g)(1), relying primarily on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), where the Supreme Court mandated a "history and tradition" test for laws that regulate conduct protected by the Second Amendment. More specifically, defendant attempts to raise two types of attacks on Section 922(g)(1): first, that the statute is unconstitutional on its face because "banning firearms possession by *all* felons (including those with non-violent priors) fails *Bruen's* new history-based test" (**ECF No. 38** at 5); second, that the statute is unconstitutional as applied to defendant—a claim that is mentioned at the beginning of the motion but otherwise omitted (*id.*, at 1).

The government, for its part, argues that Section 922(g)(1) is a lawful regulatory measure on the right to keep and bear arms for two reasons. First, the government claims that the Second Amendment does not protect the conduct at issue, which it defines as "possession of a firearm by a convicted felon." **ECF No. 44** at 5. Second, the government argues that even if it did, Section 922(g)(1) is still "consistent with the nation's historical tradition of disarming persons considered a risk to society." *Id.*

### III.   Legal Standard

When reviewing a defendant's motion to dismiss an indictment, the reviewing court "must not inquire into the sufficiency of the evidence underlying the indictment," rather, the court must consider "whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)). In doing so, "courts take the facts alleged in the indictment as true…" and "routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (citing *United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011)). A "technically sufficient indictment handed down by a duly impaneled grand jury is enough to call for trial of the charge on the merits." *Id.* (citations omitted).

As to constitutional challenges, facial challenges are "the most difficult to mount successfully [because] the challenger must establish that no set of circumstances exist under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). If a court is able to identify a scenario in which the law could be validly applied, then the law survives the challenge. *See United States v. Rahimi*, 602 U.S. 680, 693 ("[T]o prevail [on a facial challenge], the Government need only demonstrate that [the law] is constitutional in some of its applications. And here the provision is constitutional as applied to the facts of [the challenger's] own case.").

IV.     Discussion

   **A. Applicable framework to constitutional challenges under the Second Amendment.**

   Over two hundred years after the ratification of the Bill of Rights, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), first held that the Second Amendment protects an individual's right to keep and bear arms for self-defence. Two years later, in *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court incorporated this individual right, making it applicable to the states via the Fourteenth Amendment. In the years after *Heller* and *McDonald*, the First Circuit, as well as other federal circuit courts of appeal, devised and implemented a two-step test to evaluate the constitutionality of firearm regulations under the Second Amendment. *See, e.g.*, *Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018). Under this test, courts would first ask whether the challenged law burdens conduct within the scope of the Second Amendment, "a backward-looking inquiry, which [sought] to determine whether the regulated conduct was understood to be within the scope of the right at the time of ratification." *Id.*, at 669 (internal citation and quotation marks omitted). If the conduct did indeed fall within the purview of the Second Amendment, the courts would then "determine what level of scrutiny [was] appropriate and . . . proceed to decide whether the challenged law survive[d]. . . ." *Id.*

   In 2022, the Supreme Court did away with this test in *Bruen*, explicitly forbidding the application of means-end scrutiny to firearm regulations under the Second Amendment. *See Bruen*, 597 U.S at 24. In its place, it announced a different two-step test which purported to further refine the history and tradition analysis applied in *Heller*. *Bruen* essentially required

courts to first determine whether the Second Amendment's plain text covered the regulated conduct, and if so, then whether the government could demonstrate that the regulation was consistent with the United States' historical tradition of firearm regulations. *Id.*, at 17.[1] This second step involved a nuanced historical evaluation of whether the challenged regulation addressed a longstanding societal problem that was treated in a specific manner at the time the Second Amendment was ratified. If this longstanding societal problem was not regulated at all, was subject to unsuccessful regulation attempts, or was regulated but in a materially different way, then the modern regulation was unconstitutional. *Id.*, at 26-27. If, on the other hand, the regulation addressed "unprecedented societal concerns or dramatic technological changes," then the government could be afforded more leeway and could establish the constitutionality of the regulation by demonstrating the existence of sufficiently analogous historical regulations. *Id.*, at 27-29.

Just two years after *Bruen*, the Supreme Court rejected a facial challenge to the constitutionality of a subsection of 18 U.S.C. § 922(g)(8) that disarms persons against whom a court has issued a restraining order and has found that the person poses a credible threat to the physical safety of an intimate partner or child. *Rahimi*, 602 U.S at 688-91. In doing so, the

---

[1] Although the Supreme Court's formulation of the first step focuses on the conduct purportedly covered by the Second Amendment, there is reason to believe that courts need also evaluate whether the individual challenging the regulation is included in "the people" and whether the firearm in question is covered by the amendment's use of the term "arms." *Bruen*, 597 U.S. at 31-32 (examining whether the challengers were "part of 'the people' whom the Second Amendment protects" and establishing that "handguns are weapons 'in common use' today for self-defense" before turning to "whether the plain text of the Second Amendment" protected the regulated conduct).

Supreme Court admonished lower courts not to read *Heller* and *Bruen* as "suggest[ing] a law trapped in amber." *Id.*, at 691. Dealing principally with *Bruen's* second-step analysis, the Supreme Court further clarified that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791," and thus:

> …the appropriate analysis involves considering **whether the challenged regulation is consistent with the principles that underpin our regulatory tradition**. A court must ascertain whether the new law is **relevantly similar** to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances.

*Id.*, at 691-92 (emphasis added) (cleaned up). In sum, "[t]he law must comport with the principles underlying the Second Amendment…." *Id.,* at 692; *see also United States v. Langston*, 110 F.4th 408, 417-18 (1st Cir. 2024) (discussing *Rahimi*).[2]

Taking note of the above, the Court will proceed to evaluate defendant's constitutional challenge to Section 922(g)(1). However, the Court advances that defendant's motion will rise or fall with the viability of his *facial* challenge because any as-applied challenge he may have

---

[2] In *Rahimi*, the Supreme Court observed that:

> [S]ome courts have misunderstood the methodology of our recent Second Amendment precedents…. As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition…. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances.

*Rahimi*, 144 S. Ct. at 1897-98 (cleaned up). The Court understands this to have effectively done away with the "distinctly similar" standard suggested by *Bruen* in favor of the more flexible "relevantly similar" approach, where courts must now analogize to "principles" rather than fixating on comparing the specific aspects of the statute. *See United States v. Astacio-Mieses*, No. CR 23-028 (ADC), 2024 WL 4304630, at *7 n.6 (D.P.R. Sept. 26, 2024) (explaining rationale).

had was abandoned or waived. As mentioned above, he only alludes to an as-applied challenge at the beginning of his motion. **ECF No. 38** at 1. Nowhere in the rest of the filing does he argue that the statute is unconstitutional as applied to his specific circumstances—he does not even attempt to describe what those circumstances are. The Court has no obligation to supply what defendant has failed to provide. *See United States v. Pérez-Velázquez*, 488 F. Supp 2d 82, 87 (D.P.R. 2007) ("Undeveloped arguments not supported by legal authorities are deemed waived and/or abandoned." (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Accordingly, because his purported as-applied challenge was abandoned at the threshold, the Court will only consider defendant's facial challenge to Section 922(g)(1).[3]

### B. The continued vitality of *United States v. Torres-Rosario*.

That said, defendant's facial challenge hits a snag right out the gate. In *United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011), the First Circuit rejected an as-applied challenge to Section 922(g)(1) by a defendant who had at least "two prior convictions for serious drug offenses . . . and drug dealing is notoriously linked to violence." *Torres-Rosario*, 658 F.3d at 113. Before doing so, the First Circuit appeared to reject the viability of facial or "blanket" challenges

---

[3] In any case, the Court would likely have denied an as-applied challenge because, according to the record, defendant has at least three prior state and federal convictions for aggravated assault, conspiracy to possess and distribute controlled substances, aggravated illegal appropriation, and violations of Puerto Rico state gun laws, all felonies for which he served sentences of more than one year imprisonment. And insofar as any as-applied challenge would have centered on an argument that his prior convictions were somehow insufficiently serious or for non-violent felonies, it would have failed in light of the serious and violent nature of the crimes underlying them. In *United States v. Torres-Rosado* (discussed more fully below), the First Circuit already rejected an as-applied challenge to Section 922(g)(1) where the defendant had prior convictions related to drug dealing. *See United States v. Torres-Rosado*, 658 F.3d 110, 113 (1st Cir. 2011).

to Section 922(g)(1), relying heavily on *McDonald's* dictum that neither it nor *Heller* "cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." *See Torres-Rosado*, 658 F.3d at 113-14 (quoting *McDonald*, 561 U.S 742, 786 (2010)).[4]

Although the First Circuit has yet to revisit *Torres-Rosario* in light of *Bruen* and *Rahimi*,[5] many district courts within the First Circuit have considered themselves bound to it as a matter of in-circuit precedent. *See, e.g., United States v. Torres-Díaz*, No. CR 23-410 (FAB-GLS), 2024 WL 4870562, at *3 (D.P.R. Nov. 22, 2024), *report and recommendation adopted*, No. CR 23-410 (FAB), 2024 WL 5321577 (D.P.R. Jan. 10, 2025) (citing eight cases from district courts in the First Circuit denying facial challenges to Section 922(g)(1) under *Torres-Rosario*). That is the correct view of *Torres-Rosario*: "Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004). Defendant points to no reason why this Court should disagree with its brethren. Although *Bruen* and *Rahimi* evidently set forth a novel standard for Second Amendment challenges, they do not "unmistakably" call into doubt *Torres-Rosario*'s holding.

---

[4] In doing so, it left somewhat open the possibility that as-applied challenges could be recognized in the future by the Supreme Court. *Torres-Rosario*, 658 F.3d at 113 ("[T]he Supreme Court may open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban."); *see also United States v. Turner*, 124 F.4th 69, 77 n.5 ("[O]ur pre-*Bruen* caselaw did not foreclose as-applied Second Amendment challenges." (citing *Torres-Rosario*, 658 F.3d at 113)). But, as relevant to lower courts bound by circuit precedent, the First Circuit refused to do so in the circumstances presented by that defendant.

[5] To date, it has only held that even after *Bruen* and *Rahimi*, a court does not commit plain error when denying an as-applied challenge to Section 922(g)(1). *United States v. Langston*, 110 F.4th 408, 420 (1st Cir. 2024).

*Salerno* and *Rahimi* hold that, if a statute is valid in one context, then it cannot be facially unconstitutional. *Rahimi*, 602 U.S. at 693; *Salerno*, 481 U.S. at 745. Logically, because *Torres-Rosario* holds that Section 922(g)(1) is constitutional as applied to persons who have been convicted of some felonies, then the statute cannot be unconstitutional on its face. Therefore, as a matter of *stare decisis*, the Court is bound to reject defendant's facial challenge to the constitutionality of Section 922(g)(1).

However, notwithstanding *Torres-Rosario*, the Court will proceed to analyze whether plaintiff's facial challenge survives the *Bruen* test.

**C. Whether the plain text of the Second Amendment covers defendant, his firearm, and his possession thereof.**

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. Under *Bruen*, the Court must first determine whether the regulated firearm (a handgun), conduct (possessing and carrying of firearms), and the person (a convicted felon) are covered within the plain text of the Second Amendment.[6] The Court will proceed with each in sequence, but because the government conflated the conduct and person inquiries in its opposition, these two will be addressed together.

---

[6] In two prior cases involving Second Amendment challenges to another class of prohibited persons—noncitizens unlawfully present in the United States under 18 U.S.C. § 922(g)(5)(A)—this Court reviewed both the conduct and the defendant to see if they arguably were covered by the Second Amendment. *See Astacio-Mieses*, 2024 WL 4304630, at *4-6; *United States v. Pierret-Mercedes*, 731 F. Supp. 3d 284, 292-94 (D.P.R. 2024). From a careful reading of *Bruen*, the Court deduced that the firearm, the individual, and the conduct must fall under the amendment's plain text. *See Astacio-Mieses*, 2024 WL 4304630, at *4; *Pierret-Mercedes*, 731 F. Supp. 3d at 292 n.5.

### 1. Whether the handgun is protected.

Here, the firearm in question is a .45 caliber Glock pistol. **ECF No. 3** at 1. Defendant was also found carrying a total of eleven rounds of ammunition. *Id.* In *Heller*, the Supreme Court found that a handgun ban infringed on the Second Amendment, reasoning in part that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. The Second Amendment protects the possession and carrying of arms that are "in common use today for self-defense." *Bruen*, 597 U.S. at 32 (citing *Heller*, 554 U.S. at 627, and *Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016)). The government does not address this issue and does not otherwise imply that the pistol or ammunition constitute anything other than "arms" protected by the Second Amendment. The Court will therefore move to the next step in the plain-text analysis.

### 2. Whether the individual and the conduct are protected.

In its opposition, the government agglomerates both the individual and conduct elements of the *Bruen* test to argue that, purely as a matter of conduct, the Second Amendment does not protect felons possessing firearms. That framing is conceptually erroneous: the "individual" purportedly covered by the Second Amendment is a felon—that is, a person previously convicted of a crime punishable by imprisonment for a term exceeding one year—and the "conduct" at issue is possession of a firearm and ammunition. Those two units of analysis should be examined separately. Nonetheless, the Court can discern from the government's argument that its position is that felons are not part of the people protected by the Second Amendment.

The Court understands the government's argument to be that the Second Amendment protects only "law-abiding, responsible citizens" and that felons, as defined in Section 922(g)(1), are not part of this group. **ECF No. 44** at 5. But the Court is not convinced that merely tethering the Second Amendment to the rights of "citizens" is enough given the Framers' use of the broader term "the people" in the Second Amendment. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) ("…'the people' protected by the… Second Amendment[]… refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."). Many court decisions that support a citizen-only interpretation of the Second Amendment's protection hinge on *Heller*'s and *Bruen*'s repeated use of the phrase "law-abiding, responsible citizens," but this characterization was ultimately *dicta* from cases that did not involve status-based prohibitions on firearms possession, and the Court will refrain from reading too much into this phrase. Accordingly, the Court will refrain from reading too much into this phrase. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) ("[T]he language of an opinion is not always to be parsed as though we were dealing with language of a statute. Instead, we emphasize, our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context."); *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023) ("[G]eneral language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." (cleaned up)). This is particularly so here where "[h]olding

that the right to keep and bear arms belongs only to the 'citizens' subset of 'the people' (and more precisely, only to the 'law-abiding, responsible' subset of 'citizens') would entail adopting an inconsistent reading of the word 'the people' across the Constitution." *Pierret-Mercedes*, 731 F. Supp. 3d at 305 (citing *Verdugo-Urquidez*, 494 U.S. at 264-66; *Huitrón-Guizar*, 678 F.3d 1164, 1167-1169 (10th Cir. 2012)). For that reason, the Court will instead assume, without deciding, that felons are not *categorically* excluded from the plain text of the Second Amendment.

With regards to the regulated conduct, Section 922(g)(1) regulates the mere possession of firearms. That conduct seemingly falls within the Second Amendment. But in truth—and more or less in line with what the government argues—the Second Amendment does not protect all kinds and types of firearms possession. *See Heller*, 554 U.S. at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."). *Heller* held that the possession of a handgun in the home for self-defense was protected conduct under the Second Amendment. *Id.*, at 634. *Bruen* held that such protection extends outside of the home. *Bruen*, 597 U.S. at 10. But conduct falling outside this realm can be regulated without infringing on the Second Amendment. In other words, a firearm possessed for a different purpose takes the conduct "outside of the Second Amendment's 'unqualified command.'" *Id.*, at 17 (quoting *Konigsberg v. State Bar of Cal.*, 336 U.S. 36, 50 n.10).

Here, defendant was arrested in possession of a firearm, but nowhere in the indictment, the motion to dismiss, or in any other part the record is there a clear allegation that defendant possessed the firearm for purposes of self-defense.[7] In the Court's view, this omission is likely fatal to his Second Amendment challenge. *See United States v. Trinidad-Nova*, No. CR 21-398 (SCC), 2022 WL 10067519 (D.P.R. Oct. 17, 2022) (denying *Bruen* challenge in a motion to dismiss an indictment charging violation of 28 U.S.C. § 922(g)(1) in part because the movant failed to provide the Court with "sufficient factual allegations to hold that the who, what, and why at issue fall within the Second Amendment's scope.").

But this begs the question of whether there is any standing threshold that a criminal defendant must meet in order to raise a Second Amendment challenge, a question that *Heller*, *Bruen*, and *Rahimi* have left unanswered. *See Pierret-Mercedes*, 731 F. Supp. 3d at 294-95 (expanding on this and other open questions). On the other hand, nothing in these cases requires the Court to afford a defendant the generous presumption that his or her conduct is covered by the text of the Second Amendment. As the party challenging both an indictment and the constitutionality of a statute, the challenger should carry whatever burden there is of establishing that the Second Amendment is applicable, however *de minimis* it may be. The movant should, at the very least, be able to describe facts sufficient to show that the Second

---

[7] Neither is there any indication that his possession was otherwise lawful. Whether the Second Amendment protects the possession of an illegally obtained weapon remains an open question. *See Pierret-Mercedes*, 731 F. Supp. 3d at 294 ("Whether a person's possession of an illegally obtained firearm, regardless of any status-based prohibition, entitles him or her to raise a Second Amendment challenge is an issue that, in this Court's view, is not conclusively settled by either *Heller* or *Bruen*.").

Amendment's plain text protects the firearm, the person, and the conduct at issue. This follows as a matter of logic and sound judicial discretion—absent these factors, a court would effectively be deciding a constitutional question in the abstract.

All of this leads the Court to reject defendant's facial challenge because he has failed to establish that his conduct falls within the scope of the Second Amendment's protections. Accordingly, the Court need not go any further.[8]

## V.  Conclusion

As explained above, defendant's constitutional challenge fails under both *Bruen* and applicable circuit precedent.  The motion to dismiss at **ECF No. 38** is, accordingly, **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 25th day of March 2025.

                                              **S/AIDA M. DELGADO-COLÓN**
                                              **United States District Judge**

---

[8] Even if the Court assumed that defendant had established, for purposes of a facial challenge, that his conduct is protected by the Second Amendment, the Court would nonetheless deny his motion to dismiss because Section 922(g)(1) is sufficiently analogous to relevantly similar historical firearm regulations. Section 922(g)(1) seeks to address the general problem of the possession of firearms by persons deemed by Congress to be too dangerous to the security of the community and the state. *See Pierret-Mercedes*, 731 F. Supp. 3d at 297-300 (canvassing the history of the prohibited person federal statutes). In *Torres-Díaz*, the Hon. Magistrate Judge Giselle López-Soler considered all of the historical sources the government pointed to in its opposition and found that, at the end of the day, they provide sufficiently analogous historical authority to sustain the constitutionality of Section 922(g)(1). *See Torres-Díaz*, No. CR 23-410 (FAB-GLS), 2024 WL 4870562, at *5-6, *9-10; *see also Torres-Díaz*, No. CR 23-410 (FAB), 2024 WL 5321577, at *3 (D.P.R. Jan. 10, 2025) (adopting the Magistrate Judge's report and recommendation and observing that: "Colonial era laws disarming Native Americans, religious minorities, and groups that refused to swear loyalty oaths are all apt examples from the nation's history of Second Amendment rights being restricted for certain groups deemed a potential threat."). The Court sees no reason why it would not reach the same conclusion here if a *Bruen* step-two analysis were warranted—which, in this case, it is not.