## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Crim. No. 23-047 (ADC)** |
| **JOAQUIN CRUZ-JIMENEZ,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

**I.    Introduction**

Before the Court are defendant Joaquín Cruz-Jiménez's ("defendant") objections to United States Magistrate Judge's ("Magistrate Judge") Report and Recommendation ("R&R") at **ECF No. 125**.

For the following reasons, defendant's objections at **ECF No. 137** are **OVERRULED**. Accordingly, the R&R at **ECF No. 125** is **ADOPTED**.

**II.    Procedural background**

On February 2, 2023, defendant was charged in a single-count indictment with being a prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). **ECF No. 3**.  He later moved to suppress evidence and statements. **ECF Nos. 26, 39**.

More specifically, defendant requests suppression of a firearm and ammunition found in his motor vehicle during a search conducted pursuant to a state-court-warrant. **ECF No. 39**. He also moves to suppress statements he gave during a custodial interrogation after his arrest. **ECF No. 26**. The government opposed both motions. **ECF Nos. 31, 43**.

The Court referred the motions to suppress to U.S. Magistrate Judge Giselle López-Soler for a hearing and a R&R. **ECF No. 50**. The Magistrate Judge held an evidentiary hearing on February 13 and 14, 2024. **ECF Nos. 87-88**. During the hearing, the government called Puerto Rico Police Bureau ("PRPB") agent Leady Martínez-Cortés ("Martínez-Cortés and/or Officer Martínez-Cortés") and Task Force Officer, Ricardo Costales-González ("Costales-González and/or TFO Costales-González"). Defendant did not take the stand. The parties filed post-hearing briefs. **ECF Nos. 121-122**.

The Magistrate issued her R&R recommending that the Court deny both motions to suppress. **ECF No. 125**. Defendant filed timely objections to the R&R. **ECF No. 137**.

## III.    Factual background[1]

Defendant was arrested by the PRPB on August 27, 2022 on charges that are not before this Court. The arrest relates to a stabbing incident in a commercial establishment in San Juan, Puerto Rico. A vehicle associated with defendant was impounded and sealed by the PRPB at the scene. Two days later, a Puerto Rico municipal judge issued a search warrant for a 2022, Charcoal Gray, Toyota Tundra. **ECF No. 47-1**. The search warrant authorized the search for "a knife of approximately 3" to 4" inches in length and blood samples or any other evidence found herein (sic)". *Id*., at 6. The search warrant was executed on September 7, 2022. **ECF No. 125** at 2.

The PRPB conducted the search of the vehicle in the presence of defendant. *Id*. A loaded firearm and ammunition was the first thing "discovered" by the PRPB agents during the search. **ECF No. 125** at 2. It was found under a rubber mat in the floor of the driver's seat. *Id*. The PRPB also found a knife in the vehicle. *Id*.; **ECF No. 99** at 44.

---

[1] After a careful review of the docket, the Court deems that the facts distilled by the Magistrate Judge from the evidentiary hearing accurately reflect the testimony and evidence presented for suppression purposes. Moreover, the R&R's findings of facts are not contested by the defendant. *See* **ECF No. 137.** The Court was only able to find one challenge to the credibility of one witness. Even then, it was a single line in defendant's objections perfunctorily claiming that a government witness' answer to the question of whether or not he knew defendant had an attorney in a state court criminal proceeding could not be "credib[le]". **ECF No. 137** at 9. However, this challenge is undeveloped. *United States v. Zaninno*, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, the Magistrate Judge properly addressed and disposed of that issue. Indeed, the Magistrate Judge noted that "[t]here is no basis for this conclusion[,]" the "right to counsel is offense specific. McNeil, 501 U.S. at 175. It attaches once the prosecution has commenced." **ECF No. 15** at 11. In any event, this Court adds, the fact that the witness knew about pending state court proceedings does not necessarily imply that he knew for a fact that defendant had retained or had appointed counsel in such proceedings. Furthermore, he clarified that his answer was that he did not know "who" represented the defendant in the state proceedings as opposed to the fact that defendant had legal counsel in those proceedings. **ECF No. 99** at 103 ("Q: You knew, [defendant] was represented by an attorney at that time, correct? A: Well, I don't know the process at the State level. Q: You knew there was a state case pending, correct? A: Correct. Q: You knew he wasn't representing himself, correct? A: Well that information, who's representing him, I don't know that. ").

On February 9, 2023, defendant was charged with a violation of 18 U.S.C. § 922(g)(1). **ECF No. 3**. An arrest warrant and a writ of *habeas corpus ad prosequendum* followed. **ECF Nos. 5, 8**. On February 23, 2023, Costales-González and FBI Agent Shaun Borland ("Agent Borland") took defendant from state custody to the FBI offices for processing and interview before taking him to the Court for initial appearance and arraignment. **ECF No. 125** at 2.

At the outset of the interview and without there being any questions from the agents, defendant asked the agents to remove his shackles and stated in English that "I'm not new in this and you know it."[2] **ECF No. 92** at 1. He went on to say, "…if I made a mistake, like I said, I put my hands up and I, I accept my responsibility about everything… But you gotta (sic) investigate everything, because it's easy to say: 'No he got a gun.' You just say one thing. What about the rest of the history?" *Id*. The agents then posed introductory questions asking defendant if he graduated from school. At the same time, the agents handed to defendant the form titled Federal Bureau of Investigations Advise of Rights. **ECF No. 125** at 3. The following exchange between the agents and defendant ensued:

> [Defendant] Oh, this is about my rights?
> [Agent Borland] Sí
> [Defendant] I know my rights.
> [Agent Borland] Okey. But… you…
> [Defendant] What you want me, to sign up?
> [Agent Borland] Yeah.
> [Defendant] I don't want to sign… sign up anything.
> [Agent Borland] Okey.

---

[2] Defendant switched from English to Spanish a couple of times during his interview.

> [Defendant] I just want to tell for (sic) why. Because I don't have representation here about… you know?
> [Agent Borland] But it says your rights about that.

*Id*.**,** at 4-5. Defendant then read a list of *Miranda* rights from the form and without any question from the agents, defendant and the agents had the following conversation:

> [Defendant] I don't want to... I don't want to answer questions.
> [Agent Borland] Okey.
> [Defendant] I just…
> [Agent Borland] That's alright
> [Defendant] I just want to tell you that you have to investigate properly
> [Agent Borland] And that's our job…

**ECF No. 92** at 5-6. Without any question from the agents, defendant started to give his side of the events that apparently led to the search and seizure of the firearm. This first monologue lasted for approximately two and a half minutes. Among other things, defendant spoke about a firearm and a "kidnapping" in a commercial establishment. *Id*. The agents then identified themselves, asked whether defendant reported the kidnapping, and informed that they were only working on the investigation concerning the firearm. **ECF No. 125** at 3. Defendant continued speaking to the agents for approximately five minutes, without any questions from the agents. *Id*. Costales-González then asked about the vehicle, the arrest, the place in which the arrest took place, circumstances and events leading up to the arrest, the seizure and search of his vehicle and other PRPB proceedings after the search. *Id*. Defendant answered all these questions without hesitation even though he knew the interview was being recorded. *Id*. Defendant did not ask for an attorney, to stop the interview or otherwise manifested discomfort

or anything that could be interpreted as indicative of coercion or as an invocation of the right to have an attorney or to remain silent. Instead, defendant seemed eager to talk to the agents.

## IV.    Standard of review

The District Court may refer pending criminal motions to a Magistrate Judge for entry of a report and recommendation. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(b)(1). An adversely affected party may file written objections to the report and recommendation within fourteen days after served with the same. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review of "those portions of the report . . . to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F.Supp. 2d 189, 191-92 (D.P.R. 2005) (citing *United States v. Raddatz*, 447 U.S. 667 (1980)). "Absent objection by [the adversely affected party], [a] district court ha[s] a right to assume that [the affected party] agrees to the magistrate's recommendation." *M. v. Falmouth Sch. Dep't*, 847 F.3d 19, 25 (1st Cir. 2017) (citing *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985)). Thus, "a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals." *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).

## V.    Discussion

### A.  The search and seizure of the firearm and ammunition

#### a.  The Report and Recommendation

In his motion to suppress at **ECF No. 39** defendant moved to suppress evidence of the firearm and ammunition because the scope of the search conducted by the PRPB agents allegedly exceeded the limits of the search warrant, which in defendant's view, was limited to evidence connected to the stabbing incident (a knife of approximately 3" to 4" in length and blood samples). *Id*., at 2. The Magistrate Judge, however, considered a wider range of arguments for suppression. For example, the Magistrate Judge scrutinized the search warrant to evaluate if it was constitutionally overbroad. **ECF No. 125** at 4. She also addressed elements of the automobile search exception or inevitable discovery doctrine. *Id*. Ultimately, the Magistrate Judge determined that the search was reasonable and constitutionally valid under any of the arguments presented by the parties.

Specifically, the Magistrate Judge held that even if the portion of the search warrant that allowed for the search of "any other evidence" was constitutionally overbroad, the rest of the search warrant (which defendant did not properly challenge)[3] was valid and lawful. She

---

[3] Indeed, defendant did not challenge probable cause as to or the specificity of the search warrant alluding to "the knife and blood samples.". **ECF No. 125** at 5.

concluded that under *United States v. Morris*, 977 F.2d 677, 682 (1st Cir. 1992), "the remaining part of the warrant which is not offensive to the particularity requirement may stand." *Id.*, at 5.

The defense argued that since the knife was in the center console cupholders, it should have been seen and seized first. Accordingly, the search must have stopped at such point.

The Magistrate Judge then moved to the question of "whether the seizure of the firearm and ammunitions during the search of the knife and blood samples was valid". She noted that the answer to that question lied in the order in which the seized items were found. *Id.*[4] Based on the consistent testimony heard from both law enforcement officers[5], the Magistrate Judge determined the sequence in which the search was conducted and sequence in which items were seized. A four-step approach was used by the agents. At step one (1) the driver's side of the vehicle was searched first and as such, the firearm was seized first. *Id.*, at 5-6[6]. Moreover, the Magistrate Judge savvily underscored that the "even assuming that the knife was seen by the agents prior to the discovery of the firearm and ammunition… the agents were expressly authorized to keep on with the search of the vehicle for blood samples. Accordingly, there was no reason (logical or in the text of the warrant) to limit the search for blood samples to those that may have been found in the knife." *Id.*, at 5. Therefore, the Magistrate Judge found that the

---

[4] The parties agreed with the framing of the issue. **ECF No. 125** at 5.
[5] Said testimonies also coincided with the defendant's statement during the custodial interview of February 23, 2023. **ECF No. 125** at 7.
[6] The Magistrate Judge determined that the phrase within the warrant authorizing the seizure "of any other evidence herein" infringed the particularity requirement.

search was constitutionally reasonable even though they seized evidence that was not listed in the warrant.

But the Magistrate Judge went even further and concluded that, assuming the seizure of the firearm and ammunition were "impermissible under the warrant," an exception would still render the seizure constitutionally valid. *Id.*, at 7. To wit, the inevitable discovery doctrine "would apply" because the vehicle was impounded and subjected to forfeiture and inventory procedures. *Id.*, at 7.

### b. Defendant's objections

Defendant did not object to the Magistrate Judge's recommendation that suppression be denied because the search and seizure were reasonable under the terms of the valid portions of the search warrant. **ECF No. 137** at 7-8. Indeed, defendant did not challenge any of the findings of fact or legal conclusions of the Magistrate Judge on the central issue: whether the search and seizure of the firearm and ammunition were valid under the search warrant. *See* **ECF No. 137**. Instead, defendant devoted all his discussion to "exceptions" under which the search and seizure would have been lawful even if the search pursuant to the warrant was not.

Thus, after a careful review of the complete record, the Court **ADOPTS** the Magistrate Judge's unopposed recommendation to deny defendant's motion to suppress at **ECF No. 39** because the search and seizure of the firearm and ammunition under the terms of the search warrant turned lawful under the inevitable discovery exception. "Absent objection by [the

adversely affected party], [a] district court ha[s] a right to assume that [the affected party] agrees to the magistrate's recommendation." *M. v. Falmouth Sch. Dep't*, 847 F.3d at 25.

Moreover, defendant's objections to the R&R's alternative grounds for denial of his motion to suppress are also unavailing. In essence, defendant argues that "the government did not present any evidence or testimony to justify either [the automobile []] or inventory] exceptions." **ECF No. 137** at 7. However, defendant did not challenge any factual finding related to this issue. He simply contends that there was no evidence to show that "when the [vehicle] was seized there was probable cause to believe there would be evidence in the vehicle." *Id*. However, the existence of a state issued valid search warrant for the search of the vehicle is undisputed.

Contrary to defendant's argument, the record pristinely shows that "[d]efendant was arrested after leaving the scene of a murder and entering his vehicle…The vehicle was forfeited and kept in the PRPB station from the day of Defendant's arrest until (at least) the day when the search warrant was executed." **ECF No. 125** at 7. Moreover, under Puerto Rico law, property used during the commission of a felony must be forfeited. PR Laws Ann. Tit. 34 §§ 1724f, 1724g. After forfeiture, an inventory of the vehicle would have been prepared by law enforcement and the weapon and ammunition found regardless of the existence of the search warrant. PR Laws Ann. Tit. 34 §§ 1724h and **ECF No. 125** at 8.

As to the inventory search exception, defendant only claims that "there was no evidence or testimony that an inventory search occurred." **ECF No. 137** at 8. But defendant overlooks the fact that the record contains:

> convincing[] testi[mony] that, when preparing to perform the search, [PRPB] divided the search of the vehicle into four parts… seals on each of the four doors of the vehicle [placed on the night of defendant arrest] were intact and opened as each step of the search took place… The driver's side was searched first… The search moved towards the passenger's side behind the driver's seat… Then the search of the passenger's side in the front of the vehicle… Afterwards, they searched the area behind the front passenger's side… And this is consistent with the order in which Martínez-Cortés took the photographs of the items that were seized.

**ECF No. 125** at 7-8. Defendant's arguments and objections are unconvincing and overruled, respectively.

### B. Defendant's statements to law enforcement

#### a. The Report and Recommendation

Defendant objects to the Magistrate Judge's recommendation of denying defendant's request to suppress statement. In doing so, defendant argues that:

a) "At the start of his interrogation by Federal agents, Mr. Cruz unambiguously invoked his right to counsel; he explained that he knew his rights and expressed that he was not going to sign any document because he didn't have legal representative there". Accordingly, law enforcement agents were required to immediately stop interrogation.

b) Agents knew that defendant was under state criminal charges and should not have conducted an interrogation knowing he was represented by counsel at state level.

c) Agents posed questions to defendant in spite of his assertions that he was not to sign a waiver of rights, without representation being present.

Based on the findings of fact previously discussed, mainly those related to the initial stages of defendant's interview, the admonishment of *Miranda's* rights and the recorded evidence of the interview, the Magistrate Judge determined that "[g]iven [d]efendant's evident willingness to continue to speak (immediately after stating that he would not sign any documents) throughout the interview, Defendant's refusal to sign the waiver form without counsel present was not a clear invocation of right to counsel." **ECF No. 125** at 9-10. After alluding to the approximately 7 minutes during which defendant voluntarily and without questions posed, spoke to the agents, the Magistrate Judge considered that, a reasonable law enforcement officer "would not have understood" defendant's refusal to sign a document as a request for assistance of counsel. *Id*. She also rejected defendant's creative argument that having an attorney in state court proceedings must be interpreted as an automatic invocation of his right to counsel that law enforcement is to respect  in every other custodial interview. *Id*., at 11 (citing *Maine v. Moulton*, 474 U.S. 159, 180 n.16 (1985)). Even if defendant's refusal to sign amounted to an invocation, or even if the fact that he had legal counsel in other proceedings

carried an automatic invocation effect with it, the Magistrate Judge concluded that defendant

"nonetheless waived this right." *Id.*, at 12. The Magistrate Judge reasoned:

> [a]fter reading the *Miranda* form, [d]efendant immediately spoke for
> approximately 2:30 minutes without any questions by the agents… After
> the agents identified themselves, asked whether [d]efendant reported his
> kidnapping, and informed that they were only working on the federal
> investigation concerning the gun, [d]efendant carried on with statements
> for approximately 5:00 minutes again without any questions posed by the
> agents… Defendant's unprobed statements were related to both the
> incident which led to his arrest by the PRPB and the federal investigation.
> Any invocation of right to counsel was waived.

*Id.*, at 12. Likewise, while citing to *Connecticut v. Barret*, 479 U.S. 523 (1987), the Magistrate Judge

found that defendant refusal to sign a document (the Waiver form) in the absence of counsel

was a limited request for counsel (limited to written responses.) Since defendant expressed his

willingness to talk to the agents and did so for over 7 minutes, he had waived his right to remain

silent. **ECF No. 125** at 10-13.[7]

### b. Defendant's objections

Defendant objects to the Magistrate Judge's recommendations arguing the exact same

thing that he generally argued in his motion to suppress statements and that he argued before

the Magistrate Judge. To wit, that defendant's refusal to sign a document "because he didn't

have legal representation here" constitutes an "unambiguous" invocation of right to counsel.

**ECF No. 137** at 8-9. Like he did before the Magistrate Judge, he places too much stock on the fact

---

[7] Defendant did not specifically challenge any recommendation as to his right to remain silent.

that he had legal counsel in the state court case and blames law enforcement for not actively trying to clarify the extent of his refusal to sign a form without counsel. *Id*.

Defendant raises no new arguments or legal authority in support of the arguments already addressed by the Magistrate Judge. After a careful review of the record, the Court finds that defendant's arguments are unconvincing and overrules his objections, at **ECF No. 137**.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This protection includes the right to be warned about the right to remain silent and to have the assistance of counsel at a custodial interrogation. *Miranda v. Arizona*, 394 U.S. 436 (1966) ("*Miranda*"). Waiver of *Miranda* rights prompts an "inquiry into whether a *Miranda* waiver was voluntarily, knowingly and intelligently made." *United States v. Donald*, 84 F. 4th 59, 66 (1st Cir. 2023) (quoting *Miranda*, 384 U.S. at 444).

Such waiver has "two distinct dimensions." *Morán v. Burbine*, 475 U.S. 412, 421 (1986). First, it must be voluntary, "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*., at 421. Second, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. These questions must be answered after examining the totality of the circumstances. *Id*.; *see, generally, United States v. Carpentino*, 948 F.3d 10, 26 (1st Cir. 2020).

It is beyond dispute that a request for counsel "must be clear and unambiguous." *United States v. Oquendo-Rivas*, 750 F.3d 12, 18-19 (1st Cir. 2014)(citing *Davis v. United States,* 512 U.S. 452 (1994)). In other words, the request "must be such that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*., at 19. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal… our precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459. A request "that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel" does not meet the bar. *Id*. (emphasis in the original).

The Court cannot find that defendant's refusal to sign a Form because counsel was not present constitutes an unambiguous invocation of his right to counsel. Accordingly, under this case's circumstances the suppression of statements is not warranted. *See United States. v. Oquendo-Rivas*, 750 F.3d at 19 (finding defendant's statement "'I do not understand this, my lawyer speaks'" insufficient); *see also United States v. Carpentino*, 948 F.3d at 24-25 (holding that "I kinda need a phone call to my lawyer, too. I need to let somebody know that I'm here" is ambiguous and not an unequivocal request for attorney assistance during custodial interview); *Connecticut v. Barrett*, 479 U.S. 523, 525 (1987); *U.S. v. Ortiz-Ortiz*, No. CR 21-192 (RAM), 2024 WL 621305, at *4 (D.P.R. Feb. 14, 2024) (citing *United States v. Lugo Guerrero*, 524 F.3d 5, 11 (1st Cir. 2008) and noting that the Court of Appeals there determined the defendant had not invoked

right to counsel when he refused to sign waiver of rights portion of form but not discussing the same).

In any event, defendant waived his rights to counsel and to remain silent by voluntarily speaking to the agents. *See United States v. Thongsophaporn*, 503 F.3d 51, 56-57 (1st Cir. 2007). Based on the unchallenged facts of this case, as discussed above, a reasonable law enforcement agent could not have construed this statement as an invocation under the totality of the circumstances under which such statement was made. Indeed, defendant was not only the interviewee, but he was also the interviewer and the moderator of the interrogation. He decided what to do (demanding that the agents take off his handcuffs since he arrived at the interrogation room), and then decided he would not sign the forms provided to him by the agents. More importantly, he decided he would talk even though he knew he had a right not to speak and a right to have counsel present. He also decided the topics and scope of the conversation with the agents. Only after he had spent several minutes talking out of his own volition and uninterrupted by a single question from the agents, he finally allowed one of the two agents to ask questions regarding the story he had narrated.

There is absolutely no ground in this case to draw a conclusion different from the one reached by the Magistrate Judge on defendant's rights to remain silent and to have counsel present. More importantly, defendant raises no argument or legal authority in support of his undeveloped objections.

### VI.    Conclusion

After a careful review of the record and for the reasons stated above, the Court **ADOPTS** the R&R, **ECF No. 125**; **OVERRULES** defendant's objections at **ECF No. 137;** and, thus, **DENIES** defendants' motions to suppress at **ECF Nos. 26, 39**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 13th day of March of 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**
